**SO ORDERED.**

**SIGNED this 02 day of August, 2007.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

**BENEATH THE TREES, LLC,**                    **07-01664-8-JRL**

Debtor.                                         Chapter 11

_____

## AMENDED ORDER

This case is before the court on the United States' motion to reconsider allowance of attorney fees and non-operating expenses in the interim cash collateral order entered June 19, 2007.

The debtor is a limited liability company that owns and operates an assisted living facility in Brunswick County, North Carolina, known as Corinthian Place ("the Project"). The Project is funded by a first mortgage loan of $4,084,200.00 at 5.95% per annum through Love Funding Corporation ("Love Funding"), which loan is insured by the United States Department of Housing and Urban Development ("HUD"). On November 30, 2004, the debtor entered into a Regulatory Agreement for MultiFamily Housing Projects ("Regulatory Agreement") with HUD. In return for insuring the mortgage, the owners of the Project are required to abide by the terms of the Regulatory Agreement. The Regulatory Agreement is incorporated into the "Deed of Trust and Assignment of

Rents, Profits and Income (Multifamily)," which is recorded in Brunswick County as a lien on the real property included in the debtor's estate. Love Funding has elected to assign the first mortgage loan to HUD, which assignment was in the negotiation phase at the time of the hearing on the United States' motion.

The debtor retained bankruptcy counsel and provided a retainer of $36,039.00. On May 4, 2007, the debtor filed for relief under Chapter 11. Since that time, the debtor has been operating under cash collateral orders. The United States objects to certain payments in the monthly budget presented at the cash collateral hearing on June 4-5, 2007, which budget was later incorporated into an order entered June 19, 2007. Specifically, the United States objects to the pre-petition retainer and the amount of $5000 allocated to attorney fees. The United States asserts that payment of attorney fees in connection with the debtor's bankruptcy case is impermissible under the Regulatory Agreement because the attorney fees are not "reasonable operating expenses."

In order to address whether payment of the attorney fees are permissible, the court must consider the language of the Regulatory Agreement. The Regulatory Agreement restricts the owners' use of Project funds. Specifically, paragraph 6 of the Regulatory Agreement states:

> Owners shall not without the prior written approval of the Secretary:
> (b) Assign, transfer, dispose of, or encumber any personal property of the project, including rents, or pay out any funds except from surplus cash, except for reasonable operating expenses and necessary repairs.

Form HUD-92466, ¶6(b) (11/2002). Paragraph 13(f) of the Regulatory Agreement defines "surplus cash" as follows:

> (f) "Surplus cash" means any cash remaining after:
> (1) the payment of:
> (i) All sums due or currently required to be paid under the terms of any mortgage or note insured or held by the Secretary;
> (ii) All amounts required to be deposited in the reserve fund for replacements;

2

>    (iii) All obligations of the project other than the insured mortgage unless funds for payment are set aside or deferment of payment has been approved by the Secretary; and
>    (2) the segregation of:
>    (i) An amount equal to the aggregate of all special funds required to be maintained by the project; and
>    (ii) All tenant security deposits held.

Form HUD-92466, ¶13(f) (11/2002).

The debtor failed to pay its February 2007 and March 2007 mortgage payments. While the debtor made a large payment in April 2007 in an effort to catch up its mortgage arrearage, the debtor remained delinquent on mortgage payments at the time of filing bankruptcy. Even though the debtor was authorized under cash collateral orders to pay for property insurance, the debtor became delinquent on those payments as well. While it made a payment to avoid a post-petition lapse of insurance, there still remained arrearage on the insurance at the time of the hearing. The debtor concedes that it has no surplus cash; however, even without surplus cash, the Regulatory Agreement states that the owners of the Project can pay reasonable operating expenses and necessary repairs. There is no definition for "reasonable operating expenses" in the Regulatory Agreement, but courts view those expenses as "arising from the everyday operation and maintenance of the project." United States v. Coleman, 200 F.Supp.2d 561, 567 (E.D.N.C. 2002). Reasonable operating expenses are considered for the benefit of the Project and not the benefit of the owners. Coleman, 200 F.Supp.2d at 567.

Courts have concluded that attorney fees to prepare, file and maintain a bankruptcy case benefit the owners of the project rather than the project itself; therefore, they are not reasonable operating expenses. United States v. Harvey, 68 F.Supp.2d 1010, 1019 (S.D. Ind. 1998); In re RLA of Madison, Inc., 177 B.R. 78, 80 (Bankr. M.D. Tenn. 1994); In re Tampa Bay Briarwood Assoc.,

Ltd., 118 B.R. 126, 129 (Bankr. M.D. Fla. 1990); In re Garden Manor Assoc., 70 B.R. 477, 482 (Bankr. N.D. Cal. 1987); In re EES Lambert Assoc., 62 B.R. 328 (Bankr. N.D. Ill. 1986); In re Michigan Beach Apartments, 61 B.R. 446, 450 (Bankr. N.D. Ill. 1986). Filing bankruptcy is a means for the owners of the Project to protect their investment, thus bankruptcy attorney fees are considered personal expenses of the owners. *See* RLA of Madison, Inc., 177 B.R. at 80. In fact, courts have awarded double damages to HUD in civil suits brought under 12 U.S.C. § 1715z-4a where project funds have been impermissibly used for the payment of bankruptcy attorney fees. United States v. Envicon Development Corp., 153 F.Supp.2d 114, 126 (D. Conn. 2001); Harvey, 68 F.Supp.2d at 1020-21. In short, every court that has looked at this issue has concluded that fees of bankruptcy counsel may not be paid from project funds.

While the district court in Coleman concluded that HUD Handbooks have no binding force like a regulatory agreement, *see* Coleman, 200 F.Supp.2d at 569-570, it is noteworthy that the case law is entirely consistent with the HUD Handbook that sets forth policies and procedures for the servicing of multifamily housing projects. The pertinent provision of the Handbook states that "project funds may not be used to defend a foreclosure action or to pay for a bankruptcy action." HUD Handbook 4350.1 REV-1, ¶ 10-17 (Sept. 1992).

The debtor attempts to distinguish its circumstances from the cases rejecting bankruptcy attorney fees as reasonable operating expenses. The debtor contends that, unlike the debtors in other cases, its motivation for filing bankruptcy was not to avoid a HUD foreclosure proceeding, but rather to prevent the general contractor from enforcing his lien against the property for the debtor's failure to make final payment. The debtor contends that HUD had not formally declared a default at the time the debtor filed bankruptcy and that the debtor was not using HUD funds to fight HUD. The

4

court finds the debtor's argument unpersuasive. What is determined to be a reasonable operating expense does not hinge upon HUD's actions or inaction against the debtor. There is nothing in the Regulatory Agreement to support that interpretation. However, even if that was a factor for consideration, the debtor was aware of its noncompliance with HUD requirements and knew that HUD was completely dissatisfied with its performance when it filed bankruptcy. In the months preceding the bankruptcy filing, HUD staff conducted a meeting in Greensboro, North Carolina, with the owners of the project and Love Funding. HUD was concerned with, among other things, the debtor's lack of proper management and repeated failure to provide adequate financial information. Thereafter, through several letters of correspondence, HUD pinpointed violations of HUD requirements, such as failure to operate under a HUD-approved management company. In a letter dated April 19, 2007, HUD acknowledged the debtor's mortgage default and stated that it could begin the foreclosure process upon assignment of the loan. Now, Love Funding is in the process of assigning its loan to HUD. Whether or not the debtor was motivated to file bankruptcy as a result of HUD's actions or not, the debtor received the benefit of preserving the investment of its owners and preventing HUD from taking action against the property. The court finds that the bankruptcy attorney fees are not reasonable operating expenses.

In addition, the United States objects to the use of Project funds for payment of attorney fees in connection with a lawsuit filed April 15, 2007 in the Superior Court of New Hanover County by Rufus Grainger, a dissenting member of the debtor. Mr. Grainger has sued the debtor, the other members, and Corinthian Place, Inc. Mr. Grainger is alleging claims against the defendants for breach of fiduciary duty, for an accounting, for the appointment of a receiver, and for constructive fraud. Mr. Grainger claims that the other members have made damaging decisions that have caused

the debtor to be in noncompliance with HUD requirements. The United States asserts that any attorney fees expended in connection with this lawsuit do not qualify as reasonable operating expenses under the Regulatory Agreement. The court agrees. As noted above, reasonable operating expenses are considered for the benefit of the Project, not the benefit of the owners. Coleman, 200 F.Supp.2d at 567. This lawsuit involves disagreement among members regarding management decisions, and any fees expended in connection with this lawsuit are not necessary for the operation and maintenance of the Project, as the Project could operate under different ownership. At this time, the state lawsuit is stayed by the bankruptcy filing, but any attorney fees expended in connection with the state lawsuit are not reasonable operating expenses that may be paid from Project funds when there is no surplus cash. The record supports that there was no surplus cash when this lawsuit was filed.

The United States also objects to the use of Project funds in the amount of $450.00 for a "Potential Administrator's License." Wayne Bryant has received his license and is currently the administrator for the Project. In North Carolina, an assisted living facility must have a licensed administrator. N.C. Gen. Stat. § 90-288.12. The court finds that the $450.00 towards the administrator's license is a "reasonable operating expense," as the Project needs a licensed administrator in order to operate.

The United States further objects to the payment of key man insurance, which is to protect a business upon the death of an executive or key member. There is no specific entry on the 30-day budget for key man insurance, and the United States did not provide any evidence of this insurance and its terms to support its objection. The court, therefore, denies this objection to the cash collateral order without prejudice.

Based on the foregoing, the court grants in part and denies in part the United States' motion. The debtor shall not use Project funds to pay bankruptcy-related attorney fees, as they are not reasonable operating expenses and cannot be paid with Project funds when there is no surplus cash. The debtor must disgorge and return the retainer and any attorney fees paid from Project funds in connection with this bankruptcy case. The debtor shall not use Project funds to pay attorney fees in connection with the state lawsuit brought by Mr. Grainger, as those fees are not reasonable operating expenses and cannot be paid from Project funds when there is no surplus cash. The court finds that it was permissible for the debtor to allocate and use Project funds towards an administrator's license. Because the United States provided insufficient evidence regarding its objection to the use of Project funds for key man insurance, the court denies that objection to the cash collateral order without prejudice.[1]

END OF DOCUMENT

---

[1] The court is aware of the quandary created for the debtor by this ruling. However, the debtor is not necessarily deprived of counsel. The members, whose equity investment is ultimately at stake here, are free to pay counsel from other funds. Alternatively, attorney fees may eventually be paid as a priority claim if the debtor is able to confirm a plan that cures all defaults in a fashion that generates surplus cash. Or the debtor may accept the appointment of an operating trustee, as HUD has indicated its acquiescence to payment of a trustee's expenses.