**SO ORDERED.**

**SIGNED this 04 day of October, 2007.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

BENEATH THE TREES, LLC,                                    07-01664-8-JRL

        Debtor.                                                              Chapter 11

_____

**ORDER**

This case is before the court on the following matters: (1) United States' motion to compel the debtor to provide audited financial statements and to compel the debtor to hire full-time, HUD-approved management or, alternatively, to appoint a trustee; (2) debtor's motion for authorization to enter into a post-petition management contract; and (3) the court's consideration of the continuous employment of Wayne Bryant. On September 25-26, 2007, the court conducted a hearing on these matters in Wilmington, North Carolina.

The debtor is a limited liability company that owns and operates an assisted living facility in Brunswick County, North Carolina, known as Corinthian Place. Corinthian Place was funded by a first mortgage loan of $4,084,200.00 at 5.95% per annum through Love Funding Corporation ("Love Funding"), which loan was insured by HUD. On November 30, 2004, in consideration for

1

HUD guaranteeing the loan, the debtor entered into a Regulatory Agreement for Multifamily Housing Projects ("Regulatory Agreement") with HUD, which imposed duties on the debtor related to the management and financial operations of Corinthian Place. The Regulatory Agreement was incorporated into the "Deed of Trust and Assignment of Rents, Profits, and Income (Multifamily)," which was recorded in Brunswick County as a lien on the real property included in the debtor's estate.

In the summer of 2007 after the debtor had failed to provide adequate financial information, had failed to operate under a HUD-approved management company, and had become delinquent on its mortgage payments, Love Funding assigned the note to HUD. HUD asserts that the debtors have continued to be in noncompliance with the Regulatory Agreement. Namely, HUD seeks the court compel the debtor to provide HUD with overdue financial information, including the audited financial report for the 2006 fiscal year and the cost certification necessary for final endorsement. HUD also seeks the court to compel the debtor to hire a full-time, HUD-approved management agent. In addition, HUD requests the court to reconsider the appointment of a Chapter 11 trustee in this case.

The debtor cannot avoid the terms of the HUD Regulatory Agreement by filing bankruptcy. In re Capital West Investors, 186 B.R. 497, 500-501 (N.D. Cal. 1995) (bankruptcy court erred when it modified the HUD Regulatory Agreement in Chapter 11 case); In re EES Lambert Assoc., 62 B.R. 328, 336 (Bankr. N.D. Ill. 1986) ("The regulatory [a]greement . . . is not some slight contractual undertaking that can be circumvented by the filing of a bankruptcy petition."). Here, the Regulatory Agreement specifically states that: "The books and accounts of the operations of the mortgaged property and of the project shall be kept in accordance with the requirements of the Secretary."

Regulatory Agreement, Form HUD-92466 (11/2002) at ¶ 9(d). The Regulatory Agreement further states:

> Within sixty (60) days following the end of each fiscal year the Secretary shall be furnished with a complete annual financial report based upon an examination of the books and records of mortgagor prepared in accordance with the requirements of the Secretary, prepared and certified to by an officer or responsible Owner and, when required by the Secretary, prepared and certified by a Certified Public Accountant, or other person acceptable to the Secretary.

Regulatory Agreement, Form HUD-92466 (11/2002) at ¶ 9(e). In addition, in order to go to final endorsement and receive final payment, the debtor must provide a cost certification that should have been submitted in March 2006. Neither the audited financial report for the 2006 fiscal year nor the cost certification have been provided to HUD. At the hearing on September 25, 2007, Mr. Fortner testified that the delay in completing these documents was a result of poorly kept financial records, his recent back surgery, and the debtor's failure to pay him for his services. Mr. Fortner further testified that he could complete the audited financial report for the 2006 fiscal year and cost certification within fourteen business days of the hearing date. Accordingly, these documents shall be submitted to HUD by **October 15, 2007 at 5 p.m.**

The Regulatory Agreement also requires the debtor to provide HUD-approved management of Corinthian Place, stating:

> Owners shall not without the prior written approval of the Secretary: Convey, assign or transfer any beneficial interest in any trust holding title to the property, or the interest of any general partner in a partnership owning the property, or any <u>right to manage</u> or receive the rents and profits from the mortgaged property.

Regulatory Agreement, Form HUD-92466 (11/2002) at ¶ 6(c) (emphasis added). The Regulatory Agreement further states:

> Any management contract entered into by Owners or any of them involving the

3

> project shall contain a provision that, in the event of default hereunder, it shall be subject to termination without penalty upon written request by the Secretary. Upon such request Owners shall immediately arrange to terminate the contract within a period of not more than thirty (30) days and shall make arrangements satisfactory to the Secretary for continuing proper management of the project.

Regulatory Agreement, Form HUD-92466 (11/2002) at ¶ 9(a). The debtor has operated under a succession of management companies. The most recent management company, Total Solutions, Inc., was never approved by HUD, and HUD sought a management change in February 2007 and formally demanded an acceptable management agent by letter of June 12, 2007. Corinthian Place has not operated under HUD-approved management since the debtor terminated Total Solutions, Inc.

Wayne Bryant, a relative of the owners of Corinthian Place, has obtained his administrator's license and has been managing the facility since termination of Total Solutions, Inc. HUD disapproves of Mr. Bryant's involvement in a management capacity, asserting that he fails to meet management criteria. Moreover, HUD contends that, even when previous management companies have been employed by Corinthian Place, Mr. Bryant has continued to manage operations.

At a hearing held July 13, 2007, the debtor informed HUD and the court that it intended to request HUD's approval of Senior Management, Inc., as the new management company. Marion Lockamy, the principle of Senior Management, Inc., testified at the July 2007 hearing of his extensive experience in the assisted living facility industry and explained that he had worked with assisted living facilities facing financial difficulties. Mr. Lockamy testified that he had no experience with properties subject to HUD Regulatory Agreements. The debtor presented a proposed contract between the debtor and Senior Management, Inc., for HUD's review. The debtor based the language on a contract with North Carolina Senior Citizens Federation that had been approved by HUD.

To operate, an assisted living facility must have a licensed administrator. N.C. Gen. Stat. §

90-288.12. Based on the debtor's representations that it was in the process of obtaining approval of Senior Management, Inc., on July 23, 2007, the court entered an order approving the continued employment of Mr. Bryant as administrator for a period of eight weeks.

The debtor asserts that it has undertaken efforts to obtain HUD's approval of Senior Management, Inc. The debtor contacted HUD to determine what would be required to formally seek approval of Senior Management, Inc. On July 25, 2007, HUD responded by letter, stating that the debtor must submit form HUD-9832, form HUD-2530, and a revised management contract. The debtor submitted the two forms and proposed contract by email to HUD's attorney. On August 15, 2007, HUD responded to the email, asserting that the two forms were incomplete and expressing its concerns with the proposed management contract. On August 21, 2007, the debtor mailed the two revised forms and proposed management contract to HUD's attorney.

The debtor contends that HUD has acted unreasonably by withholding approval of Senior Management, Inc. At the hearing, HUD, through its witnesses Dottie Troxler and Danette McAllister, established its concerns regarding the proposed arrangement with Senior Management, Inc. Ms. Troxler testified that the proposed arrangement would allow Senior Management, Inc., to "assist" the debtor rather than to provide full management of Corinthian Place. Senior Management, Inc., did not intend to provide forty hours of supervision of the facility; instead, Mr. Bryant would continue to serve as the licensed administrator of the facility under the supervision of Senior Management, Inc. HUD finds the proposal objectionable because the debtor has been unable to timely provide HUD with adequate financial information and adhere to other requirements of the Regulatory Agreement while Mr. Bryant has served in a management role.

The court does not find HUD's position regarding the proposed management contract with

Senior Management Inc., to be arbitrary and capricious or otherwise unlawful. 5 U.S.C. § 706. The evidence supports that, while Corinthian Place is a clean facility operating at high capacity with satisfied residents, it has been continually plagued by financial mismanagement. Accordingly, it is reasonable for HUD to require that Senior Management, Inc., provide full-time management of Corinthian Place without Mr. Bryant serving in management capacity.

By **October 11, 2007**, the debtor shall propose a revised management contract to HUD for approval of Senior Management, Inc., as manager of Corinthian Place. Under the revised contract, Senior Management, Inc., shall identify one of its own employees as the licensed administrator for Corinthian Place and identify one of its own employees who will provide forty hours of weekly on-site supervision of Corinthian Place. Until new management is approved by HUD, Wayne Bryant may continue to serve as the licensed administrator so that the facility can continue operating. Once new management is approved, Wayne Bryant may work as an employee of Corinthian Place so long as his position is not a management role.

**Within ten days of receipt** of the proposed contract, HUD shall accept and approve the contract or return the contract to the debtor and the court with redline revisions indicating why it is rejecting the contract.

END OF DOCUMENT